IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE MOVING & STORAGE OF NEW JERSEY, **Plaintiff** | : : : : | CIVIL ACTION |
| vs. | : : | NO. 06-0676 |
| THE SCHOOL DISTRICT OF PHILADELPHIA, et al, **Defendants** | : : : : | |

FILED
JAN - 4 2008
MICHAEL E. KUNZ, Clerk
By_____ Dep Clerk

## MEMORANDUM

**STENGEL, J.**                                                    **January 3, 2008**

This is a diversity action brought by a sub-contractor seeking reimbursement for unpaid moving services under an unjust enrichment theory. Both parties have filed motions for summary judgment. For the reasons discussed below, I will grant the plaintiff's motion, and deny the motion of the defendants.

I.   BACKGROUND

On September 24, 2004, the School District of Philadelphia entered into a contract ("relocation contract") with Facility Strategies, LLC, for professional relocation services to move the School District offices and equipment from five locations to a new central administration building located at 440 North Broad Street, Philadelphia. The amount of the contract, which the School Reform Commission[1] authorized on June 16, 2004, was not to exceed $1.4 million. Facility Strategies subcontracted the moving services to

---

[1] James E. Nevels, Chairman of the School Reform Commission, signed the relocation contract on behalf of the School District of Philadelphia. The School Reform Commission is responsible for the operation of the School District.

Wayne Moving and Storage of New Jersey, Inc., for an amount not to exceed $840,115.68. Wayne Moving was not a signatory to the relocation contract.

### A.    Additional Moving Services

The relocation services began in the fall of 2004 with meetings and preparation. The actual move was scheduled to begin in January 2005. All moves to the new building were to be completed by September 30, 2005, because the School District buildings had been sold and had to be vacated by that date. Due to delays beyond Wayne Moving's control,[2] the project did not start until April 2005 with additional delays that compressed the bulk of the actual move to September 2005. Non-functioning elevators contributed to the increased costs. In order to complete the job by the deadline, much of the work had to be performed during nights and weekends and on extended shifts with higher labor costs.

On September 20, 2005, Sallyann Ferullo, President and Principal of Facility Strategies, submitted Extra Work Order #1 to the School District, through its authorized representative Frank Seifert, for the increased scope and additional work in the amount of $384,100. Siefert, the project architect, approved the form by signing it and returning it to Facility Strategies.

Ferullo testified that before submitting this work order she spoke with Siefert on

---

[2] Bower Lewis Thrower, the architectural firm involved in the project, sued the School District and the School District counterclaimed for damages caused by the delay. Siefert testified in that case that the move "required a considerable amount of overtime on the movers' part that was never anticipated." Pl. Ex. 4 at *6. The School District sought to recover the $830,000 sought by Wayne moving here. Pl. Ex. 6 at *11-12.

numerous occasions and informed him that they were incurring additional work and increasing the scope of the project. According to Ferullo, Siefert told her "don't worry, just document it. As long as we have documentation we'll take care of it at the end." Ferullo Dep. p. 221. Ferullo further testified that when she asked Siefert if she should stop the work due to the increasing costs, he responded, "Oh, no. . . You got to finish. We got to finish." Ferullo then told him, "I'll get it done. Whatever it takes." Id. at 219. Ferullo understood that Siefert wanted to document the increased work through an extra work order, which is standard in the industry. When Ferullo submitted the extra work order , Siefert told her that he was not sure that he was going to sign it. Ferullo told him that if he did not sign it, she would pull Wayne Moving off the job because Facility Strategies had incurred significant additional expenses and Ferullo felt uncomfortable proceeding without acknowledgment from the School District that these expenses were approved.

Siefert's recollection of the extra work order differs. He testified that he assumed that the work order was only an estimate. When he reviewed it, he believed that the entire project was still running under the $1.4 million not-to-exceed amount. He further assumed that this change would not affect the ultimate not-to-exceed amount for the project. On December 22, 2005, Siefert learned that the project had exceeded the $1.4 million amount. On his own copy of the extra work order, Siefert noted that "[w]ork is approved on a not-to-exceed basis using approved rates." Pls' Mot. Summ. J. Ex. 8 p. 2.

When Siefert made this notation is unknown, but Wayne Moving contends that this instruction was never communicated to Facility Strategies. Siefert testified that he did not recall why there were two versions of the work order.

Siefert testified that he did not need authority to sign the extra work order but that it had to be approved by the School Reform Commission to get the extra money. The reason for this process is that it was quite possible that the Commission could have taken two months to process and approve work orders, which was not practical in the field. Seifert testified:

> This is the way that we have to do it on projects of this sort. If you'll permit me to explain, we have an extensive capital program where we build schools. This is done all the time on Extra Work Orders. The reason is it needs to be – in the field, you can't wait up to two months it takes the School Reform Commission to get process and approve the Work Orders. It's just, if not policy, it's the way it's done in the field and then they're presented to the SRC for authorization.

Siefert dep. 159-160.

On October 26, 2005, Ferullo submitted a letter to Siefert enclosing a partial invoice for the month of September, and informing him that the invoices had already exceeded the contract amount. Ferullo wrote:

> To date, I have received Wayne Moving & Storage's invoices to September 23, 2005 which bring us to $158,000 over the contract amount. I have yet to receive the invoices that reflect the last week of September which was the most intensive week of work as well as the work that was performed this month (October).
>
> The enclosed invoice only reflects the Wayne Moving & Storage Invoices to September 13th. This allows the total to stay within the contract amount and can be processed via the Accounts Payable process. Once all of the invoices have been

> received, it is my understanding that you will need to go before the SRC for the additional funding. I am confident that the remaining work will come within the projections that we discussed in the itemized Extra Work Order.

Pl's Mot. Summ. J. Ex. 10. Ferullo testified that she had originally submitted an invoice that exceeded the contract amount and Siefert returned it and requested that she revise the invoice so that it stayed within the contract amount to allow him to process it. Ferullo revised the invoice as requested and noted in the letter that she understood that Siefert would request additional funding from the School Reform Commission.

On December 20, 2005, Siefert received an additional invoice from Facility Strategies in the amount of $834,201.18, which included $830,071.18 for extra moving services. The School District has refused to pay for these services. Aside from the invoice, Wayne Moving has not submitted an additional written demand for payment to the School District. Wayne Moving has not filed suit against Facility Strategies.[3]

### B.   Relationship between the Relocation Contract and the Subcontract

The parties dispute the relationship between the relocation contract and the subcontract. Both contracts provide slightly different procedures to make changes to the project.

While it is undisputed that Wayne Moving was not a party to the relocation contract, the School District argues that this contract was incorporated by reference into

---

[3] Wayne Moving stated that "Facility Strategies has acknowledged that Wayne Moving is due the $830,000 it seeks, which is due from the School District, so there is no point in Wayne Moving suing or arbitrating with Facility Strategies." Pl's Resp. Defs' Mot. Dismiss p. 2.

the subcontract. The subcontract states that the subcontractor's work, schedule, and payment terms are set forth in a written work order but that the relocation contract "is hereby incorporated into and made a part of [the subcontract] by reference. Applicable portions of the [relocation contract] shall be made available to Subcontractor as an attachment to the Work Order or upon request." Pl's Mot. Summ. J. Ex. 1, p. 3. Wayne Moving contends that it was never provided a copy of the relocation contract. Siefert testified that he never provided Wayne Moving with portions of the relocation contract and that he dealt exclusively with Facility Strategies and never with anyone from Wayne Moving. Ferullo testified that she did not give Wayne Moving a copy of the relocation contract and that she could not recall if Wayne Moving had ever requested a copy.

Both the subcontract and the relocation contract permitted changes to the work order but provided slightly different procedures for effectuating a change. The subcontract permitted Facility Strategies to make changes to the work or request that Wayne Moving perform extra work with an equitable adjustment in the compensation. The relocation contract allowed additional services if approved in advance by the School District's designated representative, and compensation for additional services would be provided in an equitable amount to be mutually negotiated by the School District and the relocation contractor. The defendants contend that the parties did not mutually negotiate additional services. However, Wayne Moving's proposal, submitted to the School District on March 23, 2004, included a detailed rate schedule and all services were

provided in accordance with the rate schedule.

The relocation contract has a provision that requires subcontractors to look to the relocation contractor, i.e., Facility Strategies, for payment, satisfaction, or legal redress in the event of a dispute. Wayne Moving insists that it is not bound by that provision because it neither received a copy of the relocation contract nor agreed to the waiver of its rights.

On February 14, 2006, Wayne Moving filed a complaint in this court against the School District of Philadelphia and the School Reform Commission to recover $830,071.18, in unpaid moving expenses. On August 15, 2006, I denied the defendants' motion to dismiss the complaint. The parties have both filed motions for summary judgment.

## II.   LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party initially bears the burden of showing the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met simply by demonstrating "to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. A fact is "material" only when it could affect the result of the lawsuit under the

applicable law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." Id. The moving party must establish that there is no triable issue of fact as to all of the elements of any issue on which the moving party bears the burden of proof at trial. See In re Bessman, 327 F.3d 229, 237-38 (3d Cir. 2003) (citations omitted).

After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see also Williams v. West Chester, 891 F.2d 458, 464 (3d Cir. 1989). A motion for summary judgment looks beyond the pleadings and factual specificity is required of the party opposing the motion. Celotex, 477 U.S. at 322-23. The non-moving party may not merely restate allegations made in its pleadings or rely upon "self-serving conclusions, unsupported by specific facts in the record." Id. Rather, the non-moving party must support each essential element of its claim with specific evidence from the record. See id.

A district court analyzing a motion for summary judgment "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in favor of that party. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005) (citations omitted). The standards governing cross-motions for summary judgment are the same, although the court must construe the motions independently, viewing the

evidence presented by each moving party in the light most favorable to the nonmovant. Grove v. City of York, 342 F. Supp.2d 291, 299 (M.D. Pa. 2004). Summary judgment is therefore appropriate when the court determines that there is no genuine issue of material fact after viewing all reasonable inferences in favor of the non-moving party. See Celotex, 477 U.S. at 322.

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment

#### (1) Diversity Jurisdiction

In its response to the plaintiff's cross-motion for summary judgment, the School District argues, for the first time, that the court lacks jurisdiction due to a lack of diversity. It claims that Wayne Moving's principal place of business is in West Chester, Pennsylvania and not Pennsauken, New Jersey, and that therefore the parties are citizens of the same state. The defendant makes this bold assertion without citation to the record.

Under 28 U.S.C. § 1332(a), federal courts have diversity jurisdiction over disputes between citizens of different states where the amount in controversy exceeds $75,000.00, excluding interest and costs. A corporation is a citizen of the state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. 1332(c)(1). A corporation can only have one principal place of business. Bruesewitz v. Wyeth, Inc., No. 05-5994, 2006 U.S. Dist. LEXIS 13206 (E.D. Pa. Mar. 27, 2006); Campbell v. Assoc., 223 F. Supp. 151, 154 (E.D. Pa. 1963). To determine the principal

place of business, courts in the Third Circuit apply a center of corporate activities test. Midlantic Natl. Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995); Kelly v. United States Steel Corp., 284 F.2d 850, 854 (3d Cir. 1960). To make this determination, courts look at where the corporation conducts its affairs including the location of physical plants, assets, employees, boards of director and shareholder meetings. Bruesewitz, 2006 U.S. Dist. LEXIS 13206, at *5-6 (internal citations omitted).

Wayne Moving is incorporated in New Jersey and contends that its principal place of business is Pennsauken, New Jersey. Since 1989, it has continuously rented 40,000 square feet of space in Pennsauken where it conducts its business. Twenty-five to thirty employees work at this office. Twenty-five trucks are garaged there, including the trucks used to move the School District. Wayne Moving holds all of its directors' and shareholders' meetings at this location. It also conducts its banking in New Jersey. Defendants cite no evidence to the contrary. I find that the requirements for subject matter jurisdiction are met, and that this case is properly before the court.[4]

---

[4] This case also presents a conflict of law issue, even though both parties assume that Pennsylvania law applies. Because there is no express contract between the parties, it is not readily apparent which state's law to apply to this dispute. The relocation contract requires the application of Pennsylvania law, while the subcontract selects the law of New Jersey.

A federal court must apply the choice of law rules in the state in which it sits. Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "The first step in a choice of law analysis under Pennsylvania law is to determine whether a conflict exists between the laws of the competing states. If no conflict exists, further analysis is unnecessary. If a conflict is found, it must be determined which state has the greater interest in the application of its law. Weighing these interests requires a further determination as to which state had the most significant contacts or relationships with the...contract." Griffith v. United Airlines, Inc., 203 A.2d 796 (Pa. 1964).
(continued...)

### (2) Timeliness of Wayne Moving's Motion for Summary Judgment

The defendants also argue that I should not consider Wayne Moving's cross-motion for summary judgment because it is untimely. I did not include a deadline for dispositive motions in my Scheduling Order because this case appeared to be a garden variety contract dispute with no real dispute of facts. At the final pretrial conference, I granted the defendants' request to file a motion for summary judgment. Wayne Moving submitted its cross-motion for summary judgment in response to the defendants' motion without seeking leave of court.

Federal Rule of Civil Procedure Rule 56 states that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." FED. R. CIV. P. 56(a). Because this motion was filed more than twenty days after the commencement of the action and after service of the defendants' motion for summary judgment, it satisfies the requirements of Rule 56. Therefore, the motion is not

---

⁴(...continued)
For the purposes of this motion, the court will have to apply state law on unjust enrichment. There does not appear to be any appreciable difference between New Jersey and Pennsylvania law in this area. Compare Gee v. Eberle, 420 A.2d 1050, 1059 (Pa. Super. Ct. 1980) (explaining elements of unjust enrichment under Pennsylvania law) and Callano v. Oakwood Park Homes Corp., 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966) (stating same elements for unjust enrichment under New Jersey law). Therefore, there is no conflict and I will apply Pennsylvania law.

untimely and is properly before me.

### (3) Unjust Enrichment Claim

The defendants properly argue that the doctrine of unjust enrichment theory is inapplicable when the relationship between the parties is founded upon written agreements. Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006). In Wilson, the Supreme Court of Pennsylvania explained:

> [T]his bright-line rule also has deep roots in the classical liberal theory of contract. It embodies the principle that parties in contractual privity ... are not entitled to the remedies available under a judicially-imposed quasi-contract [i.e., the parties are not entitled to restitution based upon the doctrine of unjust enrichment] because the terms of their agreement (express and implied) define their respective rights, duties, and expectations.

Id.

Likewise, in order to hold that an unjust enrichment claim is barred, it must be legally certain that the parties are in privity of contract.[5] During the course of this litigation, the School District has consistently argued that there was no contract between the parties. When they answered the complaint, the defendants asserted as an affirmative

---

[5] In support of their argument, the defendants cite cases which are distinguishable from the instant case. The courts in those cases dismissed the unjust enrichment claims because there existed an express contractual relationship between the parties. See Wilson Area School District, 895 A.2d at 1251, 1255; Mid-Atlantic Constructors, Inc. v. Stone & Webster Constr. Co., No. 03-6125, 2005 U.S. Dist. LEXIS 26624, at *5-6 (E.D. Pa. Nov. 4, 2005); ILM Sys, Inc. v. Suffold Constr. Co., Inc., 252 F. Supp. 2d 151, 162-63 (E.D. Pa. 2002); Coldwell Banker Phyllis Rubin Real Estate v. Romano, 619 A.2d 376, 281-82 (Pa. Super. Ct. 1993); Birchwood Lakes Cmty Ass'n v. Comis, 442 A.2d 304, 308-09 (Pa. Super. Ct. 1982); Todi v. J & C Publ'g, Inc., No. 2969, 2003 Phila. Ct. Com. Pl. LEXIS 77, at *17-18 (C.P. Phila. July 17, 2003). Here, no such relationship exists.

defense that "[p]laintiff, as a subcontractor of Facility Strategies, LLC, has no privity of contract with the School District and has no direct claim or cause of action against the School District." Answer ¶ 28. The School District even based its motion to dismiss on the assertion that Wayne Moving "has no privity of contract with defendant the School District." Defs' Mot. Dismiss ¶ 6. In their pretrial memorandum, the defendants again contended that the plaintiff had no privity of contract with the School District. Defs' Pre-Trial Mem. p. 5.

In their motion for summary judgment, however, the defendants take the contradictory position that the plaintiff's unjust enrichment claim must be barred because the relationship between Wayne Moving and the School District is governed by a written agreement. The defendants' cannot point to an express contract between Wayne Moving and the School District, because there is none. Instead, they make the attenuated argument that the subcontract between Wayne Moving and Facility Strategies incorporates the relocation contract by reference and therefore Wayne Moving and the defendants were in privity of contract.

The defendants' argument that Wayne Moving's unjust enrichment claim is barred by the relocation contract runs perilously close to being barred by the doctrine of judicial estoppel. This doctrine prevents litigants from playing "fast and loose with the courts" by assuming "inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits." Scarano v. Central R. Co., 203 F.2d

510, 513 (3d Cir. 1953); see also New Hampshire v. Maine, 532 U.S. 742, 750-751 (2001) (setting forth factors to apply the doctrine).

Nevertheless, I am not persuaded that Wayne Moving and the defendants were in privity of contract. The subcontract provides that the relocation contract is "incorporated into" the subcontract and that "applicable portions" should be made available to the subcontract as an attachment to the work order or upon request. Wayne Moving neither received a copy of the relocation contract nor asked for one. Siefert, the School District representative, dealt exclusively with Facility Strategies.[6] Additionally, the terms of the subcontract indicate that only certain portions of the relocation contract applied to the subcontract. Thus, I find that the defendants have not established that they had a contractual relationship with Wayne Moving which would have barred Wayne Moving's claim for unjust enrichment.

### (4) Section 508 of the Pennsylvania Public School Code

The defendants next argue that Wayne Moving's claim must be denied because the additional expenditures had not been approved by the School Reform Commission as required by the Pennsylvania Public School Code. Section 508 of the Code states that: "[t]he affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required in order to take action" on a variety of actions including, *inter alia*, "entering into

---

[6] Siefert testified, "Wayne Moving was transparent to us. . . . my dealings were with Facility Strategies, not with Wayne." Siefert Dep. p. 124.

contracts of any kind . . . where the amount involved exceeds one hundred dollars" or "creating or increasing any indebtedness." 24 PA. STAT. ANN. § 5-508. Section 508 not only applies to contracts when they are first executed but also to "subsequent modifications of a contract that would increase the school district's indebtedness under that contract." Hazleton Area Sch. Dist. v. Krasnoff, 672 A.2d 858, 862 (Pa. Commw. 1996).

Wayne Moving neither had an express contract with the defendants, nor was in privity of contract with them. This key detail distinguishes this case from other cases applying Section 508. For example, in School District of Philadelphia v. Framlau Corp., 328 A.2d 866 (Pa. Commw. 1974), the plaintiff, a general contractor, entered into a written contract with the defendant School District of Philadelphia for the construction of a high school. The President of the School Board agreed to settle a dispute but the Board later voted to litigate the case instead of settling. Id. at 868-69. The court held that the settlement agreement was unenforceable under Section 508 because a majority of the Board of School Directors had not voted to enter into the settlement agreement. Id. at 869-70.

In Hazleton, an architectural firm and a school district also had a written contract for services that required additional services to be confirmed in writing by the school district. 672 A.2d at 860. The court held that authorization from a few Board members did not constitute "solid proof" that the majority of the Board approved the performance

of additional services and therefore the architectural firm could not recover these under Section 508. Id. at 863.

In W.G. Tomko, Inc. v. Board of Public Education, 2005 Pa. Dist. & Cnty. Dec. LEXIS 367 (Allegheny Co. Ct. C.P. Oct. 6, 2005), the parties also had a contract to perform plumbing work at a high school. The Board verbally requested that the plaintiff perform additional work and plaintiff did so without waiting for a formal change order. Id. at *14. Even though the court noted that this conduct put the contractor "in a very difficult position," it concluded that Section 508 precluded recovery.

It is disingenuous for the defendants to argue that this section of the School Code would allow them to accept approximately $830,000 of extra moving services and then to refuse to pay for those services. This argument flies in the face of the public policy behind this provision which is "to protect the school district from any possible collusion and dishonesty, and to insure that where material or supplies are purchased they will be obtained at the best possible price." Yoder v. Luzerne Township Sch. Dist., 160 A.2d 419, 421 (Pa. 1960). The provision was not intended to lure legitimate businesses into providing their services only to be told that a technicality precludes payment.

The Supreme Court of Pennsylvania recognizes that the doctrine of equitable estoppel may be asserted against the Commonwealth and its political subdivisions even where to do so would violate a statute or ordinance, such as Section 508 of the School Code. Chester Extended Care Center v. Commonwealth, Dept. of Public Welfare, 586

A.2d 379, 382 (1991); see also Lobolito v. North Pocono Sch. Dist., 755 A.2d 1287, 1292 (2000) (upholding developer's claim of estoppel asserted against successor school board based on predecessor's promises of payment); Cameron Manor, Inc. v. Dept. of Public Welfare, 681 A.2d 836, 839-40 (Pa. Commw. 1996) (holding that the Department of Public Welfare was equitably estopped from denying full Medical Assistance reimbursement where services were provided to patients and assurances of payment had been made and the plaintiff relied on those assurances).

The elements of estoppel are: 1) misleading words, conduct, or silence by the party against whom the estoppel is asserted; 2) unambiguous proof of reasonable reliance upon the misrepresentation by the party asserting the estoppel; and 3) the lack of a duty to inquire on the party asserting the estoppel. Id. These elements are satisfied here.

Siefert testified that he and Ferullo had had conversations and exchanged e-mails prior to his receiving the September 2005 Extra Work Order. Siefert Dep. 149-150. They had discussed some of the problems she was experiencing, and Siefert asked her to submit a "change of scope," which she did as embodied in the Extra Work Order. Id. Siefert also told Ferullo to have Wayne Moving do the extra work so the move would be finished on time, even if he believed that this would not exceed the amount allocated for the contract. Id. at 160-161. Ferullo relied on Siefert's representation not to halt Wayne Moving's services, but to get the job done on time and he would work out the authorization for payment. This was reasonable considering the course of dealing with

-17-

each other and the manner in which this industry usually conducts business. It was also reasonable for Wayne Moving to believe that it had the authority to continue providing its moving services because the subcontract permitted Facility Strategies, "in its sole discretion," to make changes to the scope of the work and request that Wayne Moving perform extra work. The move, in fact, was completed by the project deadline under quite a compressed schedule and difficult conditions. Under these facts, it would be grossly inequitable for the defendants to retain the benefit of additional moving services without payment. I find that the defendants, therefore, are estopped from arguing that the payment for services provided by Wayne Moving is precluded under Section 508 of the School Code.

It would be a fundamental injustice to hold Wayne Moving responsible to absorb the costs of completing the moving of several School District buildings under a greatly compressed schedule caused by the extended delay of other entities. Accordingly, I will deny the defendants' motion for summary judgment in its entirety.

**B.     Plaintiff's Motion for Summary Judgment**

Wayne Moving argues that it is entitled to summary judgment on its unjust enrichment claim. Unjust enrichment is an equitable doctrine whereby the law implies a contract that requires the defendant to pay the plaintiff for the value of a conferred benefit. Mitchell v. Moore, 729 A.2d 1200, 1204 (Pa. Super. Ct. 1999). To prove unjust enrichment, the plaintiff must show "(1) benefits conferred on defendant by plaintiff; (2)

appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." Id. It is not necessary to show that the benefitted party had a wrongful intent; instead, a court should focus on the result of the unjust enrichment. Gee v. Eberle, 420 A.2d 1050, 1059 (Pa. Super. Ct. 1980).

Wayne Moving satisfies the elements of unjust enrichment. It is undisputed that Wayne Moving provided necessary moving services for the defendants under difficult circumstances which affected the cost of those services. The defendants' move was completed on time which permitted the buildings to be vacant for their new owners. This avoided any potential difficulty for the defendants in the sale of those properties. Under these circumstances, it would be unconscionable and grossly inequitable for the defendants to retain the benefits of additional moving services without paying for them. Accordingly, I will grant the plaintiff's motion for summary judgment.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE MOVING & STORAGE OF NEW JERSEY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-0676 |
| | : | |
| THE SCHOOL DISTRICT OF PHILADELPHIA et al, | : | |
| Defendants. | : | |

FILED
JAN - 4 2008
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

## ORDER

AND NOW, this 3rd day of January, 2008, upon consideration of defendants' motion for summary judgment (Document #37) and plaintiff's cross-motion for summary judgment (Document #38), and the responses thereto, it is hereby ORDERED that the defendants' motion is DENIED, and the plaintiff's motion is GRANTED.

IT IS FURTHER ORDERED that an assessment of damages hearing shall be held on **Monday, February 4, 2008, at 9:45 a.m., in courtroom 3B.** Counsel are directed to submit to the court a brief memorandum on the issue of damages on or before **Monday, January 28, 2008.**

BY THE COURT:

LAWRENCE F. STENGEL, J.